David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DARRYL NELSON, | : Civil Action No.: |
| Plaintiff, | : |
| v. | : **COMPLAINT FOR DAMAGES** |
| | : **PURSUANT TO THE FAIR CREDIT** |
| EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES LLC; TRANSUNION, LLC; AND FREEDOM MORTGAGE, CORP, | : **REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** |
| | : **JURY TRIAL DEMANDED** |
| Defendants. | : |

## JURISDICTION AND VENUE

1.      This Court has federal question jurisdiction because this case arises out of violation of

federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*,

773 F.Supp.2d 941, 946 (D. Nev. 2011).

2.  This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3.  Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Experian has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

**PARTIES**

4.  Plaintiff Darryl Nelson ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5.  Defendant Freedom Mortgage is a Delaware corporation with its principle place of business in Mt. Laurel, NJ, and doing business in the State of Nevada.

6.  Defendant Freedom Mortgage is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

7.  Defendant Experian Information Solutions, Inc. ("Experian") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Experian

is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f). Experian is doing business in Nevada, with a principal place of business in Ohio.

8. Defendant Equifax Information Services LLC ("Equifax") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

9. Defendant TransUnion LLC ("TransUnion") is a Delaware corporation, with its principle place of business in Pennsylvania.

10. TransUnion is a consumer reporting agency as that term is defined by 15 U.S.C. § 1681a(f). Trans Union is doing business in Nevada.

11. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant.

## FACTUAL ALLEGATIONS

### General Allegations

12. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the

consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

13.     The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

### *Plaintiff's bankruptcy filing and Experian's policy of following industry guidelines*

14.     On or about 08/29/2011, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq*. Plaintiff's case was assigned Case Number 11-23653-btb (the "Chapter 13" or "Bankruptcy"). BK ECF No. 1.

15.     At the time of filing his Bankruptcy petition, Plaintiff owned real property located at 6542 American Beauty Avenue, Las Vegas, NV 89142 (the "Property").  The Property was subject to a first mortgage deed of trust, which was being serviced initially by LoanCare, LLC.  During the pendency of Plaintiff's bankruptcy proceedings, Freedom Mortgage filed a Notice of Transfer of Servicing Rights regarding Plaintiff's mortgage. BK ECF No. 47.

16.     On 04/06/2012, Plaintiff's Chapter 13 Plan was confirmed (the "Confirmed Chapter 13 Plan" or "Confirmation Order"). BK ECF No. 31.  Pursuant to its terms, Plaintiff provided for ongoing payments on his mortgage obligation.

17.   A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. The claim is a right to payment arising from the confirmed plan. 11 U.S.C. § 1322(b)(2) ("[T]he plan may . . . modify the rights of holders of secured claims, . . . or of holders of unsecured claims. . . ."); 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor. . . ."); *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004) ("[A] plan [of reorganization] is essentially a contract between the debtor and his creditors, and must be interpreted according to the rules governing the interpretation of contracts.").

18.   On 11/14/2016, after dutifully completing all payments required to all creditors under the Confirmed Chapter 13 Plan (including Freedom Mortgage), Plaintiff obtained an Order of Discharge on his Bankruptcy case. BK ECF No. 54.

19.   Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for any creditor, debt collector or mortgage servicer to report any post-Bankruptcy derogatory collection information, which was inconsistent with the orders entered by the Bankruptcy Court.

20.   To this end, as evidenced by 1) the Confirmation Order, 2) Discharge, and 3) lack of any orders entered by the Court during the pendency of Plaintiff's Chapter 13 filing, after filing Chapter 13 as required by law to present, Plaintiff made timely payments to Freedom Mortgage.

21.   To the extent that the Plaintiff's creditors (in particular Freedom Mortgage) chose to furnish data to a CRA consistent with the terms of the Confirmation Order, such data should have been included in the Plaintiff's "consumer file."

5

22.    Pursuant to 15 U.S.C. §1681g(a)(1), "[e]very consumer reporting agency shall, upon request, clearly and accurately disclose to the consumer…[a]ll information in the consumer's file at the time of the request," subject to the Plaintiff providing "proper identification" pursuant to 15 U.S.C. §1681h(a)(1).

23.    "The term 'file', when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."  15 U.S.C. §1681a(g).

24.    As discussed below, the Defendant CRAs failed to comply with their statutory obligation to provide the Plaintiff all information in the Plaintiff's consumer file thereby violating the above defined statutory obligations.

25.    Additionally, Defendants' conduct described herein also failed to comply with the Consumer Data Industry Association ("CDIA")'s Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

26.    The CDIA publishes the Metro 2 reporting standards to assist furnishers and CRAs (like the Defendants) with their compliance requirements under the FCRA.

27.    A furnisher's failure to follow industry reporting guidelines may establish materially misleading reporting where (1) the furnisher adopts the standard, (2) the furnisher deviated from the standard, and (3) this "deviation might adversely affect credit decisions—in other words, that entit[ies] would have expected [the defendant furnisher] to report in compliance with the [CRRG] guidelines."

28.    On information and belief, Defendants herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of its respective

duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

29.     The Metro 2 format guidelines provide specific instruction for properly reporting a secured debt for which a consumer completes the required payments through a chapter 13 bankruptcy, but continues making payments on the account because it is still open following the bankruptcy, i.e. mortgages.  *See, e.g.*, 2016 CDIA Credit Reporting Resource Guide ("2016 Metro 2"), Frequently Asked Question 29, at pages 6-26.   And that instruction is that the reporting remove any suppression codes associated with bankruptcy reporting "so that ongoing payments made by the consumer can be reported."  *Id.*

30.     Despite the Metro 2 Format's instructions, the Defendants named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below.

31.     In turn, the CRA Defendants rereported inaccurate and incomplete information, respectively, thus violating their respective duties to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when providing a consumer with a disclosure of his consumer file.

32.     To this end, the incomplete reporting provided to the Plaintiff as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

33.     A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data.  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

34.     Additionally, reporting and rereporting patently incorrect and/or misleading statements

also violates 15 U.S.C. § 1681g(a) because the lack of clarity in the information reported

and rereported has the tendency to confuse ordinary consumers like Plaintiff.

## THE EXPERIAN VIOLATIONS

***Experian and Freedom Mortgage Failed on Investigation of Plaintiff's Dispute to
Report Complete Information about the Freedom Mortgage Account No. ****4032***

35.     Plaintiff obtained a consumer report from Experian, dated March 20, 2017, Report

No. 2580-8088-25 ("Experian Disclosure").  The Experian Report included reporting of a

Freedom Mortgage partial account no. ****4032 ("Freedom Mortgage Account").

36.     Specifically, on information and belief, the Experian Disclosure indicated that positive data

Freedom Mortgage should have been reporting was suppressed or missing altogether,

thereby depriving the Plaintiff of positive credit data which would have provided the

Plaintiff a true "fresh start" after filing Bankruptcy.  That is, the material omission of

Plaintiff's positive payment history on his mortgage was patently incorrect because he was

in fact making timely monthly payments since April 29, 2016, when the loan servicing was

transferred to Freedom Mortgage ("Positive Suppressed Data").

37.     This failure caused the Plaintiff's Credit File to include materially misleading omissions,

which in context created misperceptions about the Plaintiff's timely (yet unreflected)

monthly payments to Freedom Mortgage.

38.     Upon information and belief, the Payment History segment has a significant overall impact

on the various consumer reporting products that Experian offers credit decision makers.

39.     The Payment History reporting was patently incorrect because it did not reflect Plaintiff's

actual payment performance beginning April 2016 and continuing thereafter.  Instead, it

reflected no performance whatsoever.

40.    This failure was also materially misleading because these omissions created misperceptions about Plaintiff's *actually* timely monthly payments to Freedom Mortgage beginning April 2016 and continuing thereafter.

41.    Accordingly, on or about October 26, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Experian's incomplete reporting by notifying Experian, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Credit File.

42.    Specifically, Plaintiff sent a letter, certified, return receipt, to Experian (the "Experian Dispute Letter"), requesting the above incomplete and misleading omissions be corrected to include the Suppressed Positive Data.

43.    Plaintiff included proof of the Suppressed Positive Data, which was provided directly by Freedom Mortgage to Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R. § 1024.36 (the "RFI Response") to Freedom Mortgage.

44.    In relevant part, the Experian Dispute Letter stated:

**Freedom Mortgage, Account No. ****4032 - Incomplete Mortgage Reporting**

As you can see from your credit file and attached documents regarding this account, I maintained the above mortgage account with Freedom Mortgage (Freedom) and you are not reporting complete information about this account. First, I have remained totally current on my mortgage to Freedom, so it was inaccurate for Freedom to report that I was "15 days" delinquent "2" times and "30 days" delinquent "1" time "Last Year" as appears the case based on Freedom's response to my information request (attached hereto). This was false and inaccurate and in fact Freedom filed a response to my Chapter 13 trustee's notice of file cure stating that I was not only current but made all post-bankruptcy payments after filing my Chapter 13.

Freedom otherwise advises that it has reported I was current on this account all times in the last two years (the "Positive Credit Data") with the exception of the 3 disputed months discussed above.  However, you did not include all this information in my requested credit file and reporting this information is necessary to provide "complete" information about this

9

tradeline and will provide a complete picture of my "positive" payment history with Freedom as well as remove the derogatory items reported by Freedom, which you are suppressing so I can't directly dispute.

It is therefore plainly evident that you are impermissibly suppressing positive credit data, which is depriving me of *complete* and accurate credit reporting furnished about this account. Accordingly, please stop suppressing this information and report the Positive Credit Data. Your failure to report this data is lowering my credit score and further in violation of your reporting duties to report **complete** information about my account. Moreover, through your correction of this account ***do not delete the positive information or trade line*** which Freedom is reporting as this request should only be considered to request correction to add (not subtract) the Positive Credit Data Freedom has already furnished to you.

Please look into this and update my credit report with the correct and complete information. Also, send this dispute to the above furnishers so this information can be verified and corrected. If you choose not to correct the disputed information, please include a statement on my credit report stating that I dispute the above information.

45.    Indeed, the RFI Response (and Plaintiff's letter explaining the minor discrepancies) clearly laid out the Suppressed Positive Data that Experian failed to include in Plaintiff's Credit File.

46.    After receiving the Experian Dispute Letter, Experian was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

47.    On or about November 22, 2017, Plaintiff received notification from Experian through its "reinvestigation," Experian Report No. 1257-6471-74, that Experian received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and updated two other accounts that Plaintiff did not dispute in his letter. Further, Experian's Reinvestigation now stated that the account was closed in September 2017, which, upon information and belief, is inaccurate because this account remains open and current. Experian failed to acknowledge

or correct Plaintiff's Credit File to any of the Suppressed Positive Data in Freedom Mortgage's tradeline.

48.   A reasonable investigation by Experian and Freedom Mortgage should have resulted in an update to Freedom Mortgage's tradeline to include all of the Suppressed Positive Data.

49.   Experian and Freedom Mortgage therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Consumer File.

50.   Experian and Freedom Mortgage failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

51.   Experian re-reported the incomplete and inaccurate misleading information on Plaintiff's Credit File.  Specifically, the Positive Suppressed Data continued to remain suppressed and thus omitted from the Plaintiff's Consumer File.

52.   Experian and Freedom Mortgage, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

53.   Due to Experian and Freedom Mortgage's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

54.   And, because notice of the results of reinvestigation constitutes a consumer report within the meaning of 15 U.S.C. §§ 1681a(d), 1681i(a)(6)(B)(ii), the materially omission of the

Positive Suppressed Data on the notice of results of reinvestigation perfected Plaintiff's

injury as soon as Experian provided it Plaintiff.

55.  Failing to report and/or rereport the Positive Suppressed Data also constituted a violation

of 15 U.S.C. § 1681g(a) because the lack of clarity and numerous omissions in the

information reported and rereported has the tendency to confuse ordinary consumers like

Plaintiff.

56.  Plaintiff's efforts to correct Experian and Freedom Mortgage's incomplete and inaccurate

reporting were fruitless resulting in this suit.

57.  Experian timely notified Freedom Mortgage of the dispute based on its mandated statutory

duty pursuant to 15 U.S.C. § 1681i, and Experian's continued incomplete and inaccurate

reporting of the Positive Suppressed Data in light of its knowledge of the actual errors and

omissions was willful.  Experian's errors and omissions were also willful given that this

incomplete and inaccurate reporting continued despite Plaintiff providing Experian with

the RFI Response from Freedom Mortgage as part of Plaintiff's dispute letter specifically

stating that Freedom Mortgage had reported Plaintiff as "current" beginning April 2016.

Plaintiff is, accordingly, eligible for statutory damages.

58.  Also as a result of Experian's continued incomplete and inaccurate reporting of the Positive

Suppressed Data, Plaintiff has suffered actual damages, including without limitation issues

regarding credit standing, out-of-pocket expenses in challenging the Defendants' wrongful

omissions, damage to Plaintiff's creditworthiness, and emotional distress.

59.  By reporting incomplete and inaccurate account information relating to Freedom

Mortgage's Account after notice and confirmation of its errors, Experian failed to take the

appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively, or comply with 15 U.S.C. § 1681g(a).

## THE EQUIFAX VIOLATIONS

***Inaccuracies on Plaintiff's March 2017 Equifax Report regarding BANA Account***

***No. 18538**** and BSI Financial Services Inc. Account No. 51562*****

60.    In an Equifax credit report dated March 20, 2017, Report No. 7079058621 ("Equifax Report"), Bank of America, N.A. ("BANA") inaccurately reported for BANA Account No. 18538**** a scheduled payment amount of $1,508. Because Plaintiff's debt was discharged through bankruptcy, there is a $0 balance on the account, so there should be no payment scheduled.

61.    Additionally, in the same March 2017 Equifax Report, BSI Financial Services Inc. inaccurately reported "historical account information" with an "amount past due" of $52,924 to $60,437 from March 2015 through September 2015.  This was inaccurate, since Plaintiff performed all obligations required under the Chapter 13 Plan and obtained a discharge.

### *Equifax Failed to Properly Respond to Plaintiff's Dispute*

62.    On or about May 24, 2017, and pursuant to 15 U.S.C. 1681i(a)(2), Plaintiff disputed the reporting of, *inter alia*, BANA Account No. 18538**** and BSI Financial Services Inc. Account No. 51562**** which appeared on his Equifax Report.

63.    Plaintiff sent his dispute to Equifax, in writing, outlining claimed incorrect and inaccurate credit information furnished by BANA and BSI Financial Services Inc.  Specifically, Plaintiff sent a certified, return receipt letter to Equifax (the "First Equifax Dispute Letter"),

requesting that inaccurate and incorrect derogatory information be removed, corrected or deleted.

64.   Upon information and belief, upon receiving the First Equifax Dispute Letter, Equifax notified BANA and BSI Financial Services Inc. of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

65.   Alternatively, Equifax failed to notify BANA and BSI Financial Services Inc. pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

66.   Equifax was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

67.   On or about June 25, 2017, Plaintiff received a "reinvestigation" report from Equifax (Equifax Report No. 7161001905) ("Equifax Reinvestigation").  Equifax indicated that it had received and responded to the First Equifax Dispute Letter, as it indicated that Plaintiff's BANA and BSI Financial Services Inc. accounts had been "researched."

68.   A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy on August 29, 2011, and ultimately met all of his Chapter 13 Bankruptcy obligations, since Plaintiff obtained a discharge.  Indeed, Equifax reviewed Plaintiff's Chapter 13 Bankruptcy in its reinvestigation report and noted it was "currently reporting as discharged."

69.   Equifax failed to conduct a reasonable reinvestigation as required by 15 U.S.C. § 1681i, failed to review all relevant information Plaintiff provided in her Equifax dispute, as required by and in violation of 15 U.S.C. § 1681i, and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

70.    Specifically, on Equifax's reinvestigation, it continued to inaccurately report a scheduled payment amount of $1,508 for the BANA Account No. 18538****.  Further, the BSI Financial Services Inc. tradeline continued to inaccurately report a "historical account information" with an "amount past due" of $56,134 to $60,437 from June 2015 through September 2015 (March, April, and May 2015 appear to have been aged off).

71.    On information and belief, upon receipt of BANA and BSI Financial Services Inc.'s investigation into Plaintiff's dispute, Equifax blindly relied on the erroneous information contained in BANA and BSI Financial Services Inc.'s investigation, without adequately checking the response data to view how applying the data would render the reporting on Plaintiff's consumer report.

72.    In blindly relying on the data BANA and BSI Financial Services Inc. provided, Equifax failed to follow reasonable procedures designed to ensure the maximum possible accuracy of information in Plaintiff's consumer report.  15 U.S.C. § 1681e(b).

73.    By inaccurately reporting account information relating to the discharged debt, Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681i(a) and 1681e(b), respectively.

*Equifax's Suppression of Positive Data Created an Incomplete Report*

*regarding Freedom Mortgage Account No. ****4032*

74.    Additionally, on information and belief, the March 20, 2017 Equifax Report indicated that positive data Freedom Mortgage should have been reporting was suppressed or missing altogether, thereby depriving the Plaintiff of positive credit data which would have provided the Plaintiff a true "fresh start" after filing Bankruptcy.  That is, the material omission of Plaintiff's positive payment history on his mortgage was patently incorrect

because he was in fact making timely monthly payments beginning April 2016 on the Freedom Mortgage Account ("Positive Suppressed Data").

75. This failure caused the Plaintiff's Credit File to include materially misleading omissions, which in context created misperceptions about the Plaintiff's timely (yet unreflected) monthly payments to Freedom Mortgage.

76. Accordingly, on or about October 26, 2017, pursuant to 15 U.S.C. §1681i(a)(1), Plaintiff disputed Equifax's incomplete reporting by notifying Equifax, in writing, of the incomplete and inaccurate credit information contained in the Plaintiff's Equifax Disclosure.

77. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Second Equifax Dispute Letter"), requesting the above incomplete and materially misleading omissions be corrected to include the Positive Suppressed Data and correct the inaccurate reporting.

78. The Plaintiff also included proof of the Positive Suppressed Data, which was provided directly by Freedom Mortgage to the Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R. §1024.36 (the "RFI Response").

79. In part, the Second Equifax Dispute Letter stated:

**Freedom Mortgage, Account No. ****4032 - Incomplete Mortgage Reporting**

As you can see from your credit file and attached documents regarding this account, I maintained the above mortgage account with Freedom Mortgage (Freedom) and you are not reporting complete information about this account.  First, I have remained totally current on my mortgage to Freedom, so it was inaccurate for Freedom to report that I was "15 days" delinquent "2" times and "30 days" delinquent "1" time "Last Year" as appears the case based on Freedom's response to my information request (attached hereto).  This was false and inaccurate and in fact Freedom filed a response to my Chapter 13 trustee's notice of file cure stating that I was not only current but made all post-bankruptcy payments after filing my Chapter 13.

Freedom otherwise advises that it has reported I was current on this

16

account all times in the last two years (the "Positive Credit Data") with the exception of the 3 disputed months discussed above.  However, you did not include all this information in my requested credit file and reporting this information is necessary to provide "complete" information about this tradeline and will provide a complete picture of my "positive" payment history with Freedom as well as remove the derogatory items reported by Freedom, which you are suppressing so I can't directly dispute.

It is therefore plainly evident that you are impermissibly suppressing positive credit data, which is depriving me of *complete* and accurate credit reporting furnished about this account.  Accordingly, please stop suppressing this information and report the Positive Credit Data.  Your failure to report this data is lowering my credit score and further in violation of your reporting duties to report **complete** information about my account.  Moreover, through your correction of this account ***do not delete the positive information or trade line*** which Freedom is reporting as this request should only be considered to request correction to add (not subtract) the Positive Credit Data Freedom has already furnished to you.

Please look into this and update my credit report with the correct and complete information. Also, send this dispute to the above furnishers so this information can be verified and corrected.  If you choose not to correct the disputed information, please include a statement on my credit report stating that I dispute the above information.

80.   Indeed, the RFI Response (and Plaintiff's letter explaining the minor discrepancies) laid transparent the Positive Suppressed Data for Freedom Mortgage, which Equifax failed to include in the Plaintiff's Credit File.

81.   Upon information and belief, upon receiving the Second Equifax Dispute Letter, Equifax timely notified Freedom Mortgage of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

82.   Alternatively, Equifax failed to notify Freedom Mortgage pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

83. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

84. Upon information and belief, Equifax failed to provide Plaintiff with a report of the results of its reinvestigation within 45 days of receiving notice of Plaintiff's dispute, thus violating its duties to do so under 15 U.S.C. § 1681i(a)(6).

85. A reasonable investigation by Equifax and Freedom Mortgage should have resulted in an update to Freedom Mortgage's tradeline to include the Positive Suppressed Data.

86. Equifax and Freedom Mortgage therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Consumer File.

87. Equifax and Freedom Mortgage failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), respectively.

88. Equifax and Freedom Mortgage, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

89. Due to Equifax and Freedom Mortgage's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby likely causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

90. Failing to report and/or rereport the Freedom Mortgage Positive Suppressed Data and failing to send any reinvestigation report after Plaintiff's Second Equifax Dispute Letter

also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity and numerous omissions in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

91.   Plaintiff's efforts to correct Equifax's incomplete and inaccurate reporting were fruitless resulting in this suit.

92.   Equifax's likely continued incomplete and inaccurate reporting of the Freedom Mortgage Positive Suppressed Data in light of its knowledge of the actual errors and omissions was willful.  Indeed, regarding the Freedom Mortgage Suppressed Positive Data, Equifax was provided the evidence of its illegal suppression (Freedom Mortgage RFI Response included with Plaintiff's dispute letter) and willfully failed to make the requested corrections to the Plaintiff's Credit File. Plaintiff is, accordingly, eligible for statutory damages.

93.   Also as a result of Equifax's continued incomplete and inaccurate reporting of the Positive Suppressed Data, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging the Defendants' wrongful omissions, damage to Plaintiff's creditworthiness, and emotional distress.

94.   By reporting incomplete and inaccurate account information relating to Freedom Mortgage's Account after notice and confirmation of its errors, Equifax failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively, or comply with 15 U.S.C. § 1681g(a).

///



///

## THE TRANSUNION VIOLATIONS

### *TransUnion and Freedom Mortgage Failed to Report Complete and Accurate Information about Freedom Mortgage Account No. ****4032*

95.   Plaintiff obtained a consumer file from TransUnion dated March 21, 2017, identified by TransUnion File No. 373444652 (the "Credit File").

96.   Specifically, TransUnion took a "one size fits all approach" and rather than provide a "complete" and "accurate" Credit File to the Plaintiff, "suppressed" positive data being furnished from Freedom Mortgage thereby depriving the Plaintiff of positive credit data which would have provided Plaintiff a true "fresh start" after filing Bankruptcy.  However, TransUnion alternatively failed to report timely mortgage payments on the Property reported by Freedom Mortgage.

97.   This failure caused the Plaintiff's Credit File to include materially misleading omissions, which in context created misperceptions about the Plaintiff's timely (yet unreflected) monthly payments to Freedom Mortgage.

98.   Specifically, Freedom Mortgage furnished positive credit data to TransUnion stating that the Plaintiff's account was "current" with all ongoing monthly payment obligations beginning April 2016 and continuing thereafter (with the exception of three months that Plaintiff disputed with Freedom Mortgage).

99.   However, TransUnion failed to include April 2016 through October 2016 as "current" but rather labeled these six months as "unknown," thereby creating six months of suppressed positive monthly account notations wherein Plaintiff's mortgage was actually being paid timely (the "Positive Suppressed Data").

20

100.    Accordingly, on or about October 26, 2017, pursuant to 15 U.S.C. §1681i(a)(1), Plaintiff disputed TransUnion's incomplete and inaccurate reporting by notifying TransUnion, in writing, of the incomplete and inaccurate credit information contained in the Plaintiff's Credit File.

101.    Specifically, Plaintiff sent a letter, certified, return receipt, to TransUnion (the "TransUnion Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Positive Suppressed Data.

102.    Plaintiff also included proof of the Positive Suppressed Data, which was provided directly by Freedom Mortgage to the Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R. §1024.36 (the "RFI Response").

103.    In relevant part, the Trans Union Dispute Letter stated:

> **<u>Freedom Mortgage, Account No. ****4032 - Incomplete Mortgage Reporting</u>**
>
> As you can see from your credit file and attached documents regarding this account, I maintained the above mortgage account with Freedom Mortgage (Freedom) and you are not reporting complete information about this account.  First, I have remained totally current on my mortgage to Freedom, so it was inaccurate for Freedom to report that I was "15 days" delinquent "2" times and "30 days" delinquent "1" time "Last Year" as appears the case based on Freedom's response to my information request (attached hereto).  This was false and inaccurate and in fact Freedom filed a response to my Chapter 13 trustee's notice of file cure stating that I was not only current but made all post-bankruptcy payments after filing my Chapter 13.
>
> Freedom otherwise advises that it has reported I was current on this account all times in the last two years (the "Positive Credit Data") with the exception of the 3 disputed months discussed above.  However, you did not include all this information in my requested credit file and reporting this information is necessary to provide "complete" information about this tradeline and will provide a complete picture of my "positive" payment history with Freedom as well as remove the derogatory items reported by Freedom, which you are suppressing so I can't directly dispute.

It is therefore plainly evident that you are impermissibly suppressing positive credit data, which is depriving me of *complete* and accurate credit reporting furnished about this account.  Accordingly, please stop suppressing this information and report the Positive Credit Data.  Your failure to report this data is lowering my credit score and further in violation of your reporting duties to report ***complete*** information about my account.  Moreover, through your correction of this account ***do not delete the positive information or trade line*** which Freedom is reporting as this request should only be considered to request correction to add (not subtract) the Positive Credit Data Freedom has already furnished to you.

Please look into this and update my credit report with the correct and complete information. Also, send this dispute to the above furnishers so this information can be verified and corrected.  If you choose not to correct the disputed information, please include a statement on my credit report stating that I dispute the above information.

104.   Indeed, the RFI Response (and Plaintiff's letter explaining the minor discrepancies) laid transparent the Positive Suppressed Data, which TransUnion failed to include in the Plaintiff's Credit File.

105.   On information and belief, upon receiving the TransUnion Dispute Letter, TransUnion timely notified Freedom Mortgage of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

106.   Alternatively, TransUnion failed to notify Freedom Mortgage pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

107.   Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

108.   On or about November 25, 2017, Plaintiff received notification from TransUnion through its "reinvestigation" that TransUnion received notice of Plaintiff's dispute pursuant to 15

U.S.C. § 1681i(a)(6).  However, TransUnion failed to correct the Plaintiff's Credit File to include the Positive Suppressed Data in Freedom Mortgage's tradeline.  Instead, TransUnion stated that the account was "verified as accurate."  However, April 2016 through October 2016 remained "unknown" rather than "current."

109.  A reasonable investigation by TransUnion and Freedom Mortgage would have updated Freedom Mortgage's tradeline to include the Positive Suppressed Data.

110.   TransUnion therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Credit File.

111.  TransUnion failed to review all relevant information provided by Plaintiff in the dispute to TransUnion, as required by and in violation of 15 U.S.C. §1681i(a).

112.  TransUnion re-reported the incomplete and inaccurate misleading information on Plaintiff's Credit File.  Specifically, the Positive Suppressed Data continued to remain suppressed and willfully omitted from the Plaintiff's Credit File.

113.  TransUnion and Freedom Mortgage, therefore, upon receipt of Plaintiff's dispute, failed to conduct an investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

114.  Due to TransUnion and Freedom Mortgage's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

115.  TransUnion and Freedom Mortgage's failure to report and/or rereport the Positive Suppressed Data also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of

clarity and numerous omissions in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

116. Plaintiff's efforts to correct TransUnion's incomplete and inaccurate reporting were fruitless resulting in this suit.

117. TransUnion's continued incomplete and inaccurate reporting of the Positive Suppressed Data in light of its knowledge of the actual errors and omissions was willful.  Indeed, regarding the Freedom Mortgage Suppressed Positive Data, TransUnion was provided the evidence of its illegal suppression (RFI Response included with Plaintiff's dispute letter) and willfully failed to make the requested corrections to the Plaintiff's Credit File. Plaintiff is, accordingly, eligible for statutory damages.

118. Also as a result of TransUnion's continued incomplete and inaccurate reporting of the Positive Suppressed Data, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging the Defendants' wrongful omissions, damage to Plaintiff's creditworthiness, and emotional distress.

119. By reporting incomplete and inaccurate account information relating to Freedom Mortgage's Account after notice and confirmation of its errors, TransUnion failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively, or comply with 15 U.S.C. § 1681g(a).

120. Plaintiff has been required to retain counsel to prosecute this action based on TransUnion's defective reinvestigation, and is entitled to recover reasonable attorney's fees and costs.

///

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT**

**15 U.S.C. § 1681 *ET SEQ*. (FCRA)**

121.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

122.  The foregoing acts and omissions related to Defendants constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

123.  As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

124.  As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT**

**15 U.S.C. § 1681 ET SEQ. (FCRA)**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

### TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: July 3, 2018

Respectfully submitted,

/s/ David H. Krieger, Esq.
David H. Krieger, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123

Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Attorneys for Plaintiff